**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CITIBANK, N.A., as Trustee for GSAA Home Equity Trust 2007-8, Asset-Backed Certificates, Series 2007-8, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 755 |
| MICHAEL ANTHONY G. WILBERN, SANDRA D. WILBERN, PNC BANK, N.A., successor in interest to National City Bank, Illinois Department of Revenue, | ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Citibank, N.A. (hereinafter "Citibank" or "Plaintiff"), as Trustee for GSAA Home Equity Trust 20087-8, Asset-Backed Certificates, Series 2007-8, (hereinafter "Trust"), seeks to foreclose on a home located in Wadsworth, Illinois, owned by Sandra and Michael Wilbern (hereinafter "Wilberns" or "Defendants"). Citibank alleges that the Defendants' mortgage is a part of the Trust, and that the Defendants have been in default since October 2010. Defendants have moved to dismiss Citibank's complaint for lack of standing. For the reasons explained below, Defendants' motion to dismiss [24] is denied.

## BACKGROUND

Citibank filed a complaint on February 2, 2012, seeking to foreclose the Mortgage on property located at 16816 West Cherrywood Lane in Wadsworth, Illinois (hereinafter "property"). (Am. Compl. to Foreclose Mortgage [5 ](hereinafter "Compl.") ¶¶ 1, 10.)[1] Citibank is a national association chartered under the laws of New York, which maintains its principal place of business in New York. (*Id.* ¶ 3.) The Wilberns are citizens of Illinois. (*Id.* ¶ 4.) The amount in controversy

---

[1] References are to the Amended Complaint filed on February 17, 2012 [5], adding the Illinois Department of Revenue as a third defendant.

exceeds $75,000 exclusive of interest and costs. (*Id.* ¶ 2.) This court has jurisdiction pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 18 U.S.C. § 1391. (*Id.* ¶¶ 2, 6.)

The complaint alleges that Defendants executed a Mortgage on the Property on April 18, 2007, for $645,000.00, including subsequent advances. (*Id.* ¶¶ 10(b), (h).) Defendants defaulted on the Mortgage by failing to make payments due beginning on October 1, 2010. (*Id.* ¶ 10(j).) At the time the Complaint was filed, the principal owed was $643,759.98, and interest continues to accrue at a rate of $134.12 per day, plus all other costs associated. (*Id.* ¶ 10(j).)[2]

The Mortgage names both Michael and Sandra Wilbern as "borrower," and American Mortgage Network, Inc., d/b/a AmNet Mortgage as "Lender." (Apr. 18, 2007 Mortgage [5-2] at 1-2, Ex. A to Compl.) The Mortgage identifies Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS"), as "a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns." (*Id.* at 1.) By its terms, the Mortgage is governed by federal law and by the law where the property is located, i.e., Illinois. (*Id.* at 11.) In conjunction with the Mortgage, Defendants signed an Interest-Only Fixed Rate Note (hereinafter "Note") on April 18, 2007. (*See* Note [5-3], Ex. B to Compl.) An assignment was executed on November 30, 2011, transferring the Mortgage from MERS to Ocwen Loan Servicing, LLC, (hereinafter "MERS Assignment"). (*See* MERS Assignment [ 5-5.], Ex. D to Compl.) A second assignment was executed on December 27, 2011, assigning the Mortgage from Ocwen to Citibank (hereinafter "Ocwen Assignment"). (*See* Ocwen Assignment [5-4], Ex. C to Compl.) Included with the Mortgage documents is a single page document that appears between the Interest-Only Fixed Rate Note and the Planned Unit Development Rider, which states:

---

[2] Defendant PNC Bank holds a junior mortgage executed by the Wilberns and National City Bank, also dated April 18, 2007, and recorded on May 29, 2007, in the amount of $129,000.00. (Compl. ¶ 10(l).) The Illinois Department of Revenue recorded a state tax lien in the amount of $39,414.08 on December 30, 2011. (*Id.* ¶ 10(1).) Neither PNC Bank nor the Illinois Department of Revenue claims are at issue in this motion.

2

PAY TO THE ORDER OF

WITHOUT RECOURSE
AMERICAN MORTGAGE NETWORK, INC.
DBA AMNET MORTGAGE

(Mortgage at 4.) This document bears the signature of Deborah Picchiotti, identified as the "Post Closing Supervisor." (*Id.*) Citibank asserts that this document represents the indorsement of the Note in blank. (Pl.'s Resp. [27], at 1-2.) Defendants argue that the indorsement is invalid. (Defs.' Mot. [24-1], ¶ 3.)

### **DISCUSSION**

"Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). When ruling on a Rule 12(b)(1) motion to dismiss for lack of standing, this court is required to "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)). Plaintiff maintains the burden of establishing standing. *See Apex*, 572 F.3d at 443 (citing *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)). When considering a challenge to standing at the pleading stage, the court must determine whether the challenge is a facial or factual challenge, or both. *See Apex*, 572 F.3d at 443-45. When a defendant raises a factual challenge, the plaintiff has the burden of establishing by a "preponderance of the evidence or 'proof to a reasonable probability that jurisdiction exists.'" *NFIC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (citing *Gould v. Arisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993)).

Defendants appear to raise factual challenges to Citibank's standing. They note that Citibank is not the original lender and contend that the assignment documents on which Citibank relies are insufficient to transfer a mortgage to a "Real Estate Mortgage Investment Conduit" ("REMIC") under New York law. Specifically, Defendants assert that although Citibank filed its

action as trustee for an identified Trust, the Note and Mortgage were not assigned pursuant to the terms of the Master Servicing and Trust Agreement (hereinafter "MSTA") that created the Trust. (Defs.' Mot. ¶ 6; see MSTA, Ex. A to Defs.' Mot.) Plaintiff asserts that the language of the MSTA required that the depositor, GS Mortgage Securities Corp., indorse notes to the Trust in blank, but in this case, the indorsement in blank appears as a single page document from the original lender that is neither dated nor notarized. (Defs.' Mot. ¶ 8.) Defendants claim that the endorsement was created in "haste" to "facilitate a foreclosure action rather than a proper endorsement to the Trust in accordance with the Trust's terms." (*Id.*)

Defendants further argue that the two Mortgage Assignments "appear to be an exercise in Robo-signing." (*Id.* ¶ 12.) Defendants assert that the Assignments were "prepared by the same person, apparently an employee of Ocwen." (*Id.*) More importantly, in Defendants' view, the dates on the assignments (November 30, 2011 for the MERS Assignment and December 27, 2011 for the Ocwen Assignment) establish that the Mortgage was not assigned to the Trust until well after July 1, 2007. To be part of the Trust, Defendants assert, the Mortgage would have to have been assigned to the Trust by the Depositor in 2007, when the Trust was established–not by a loan servicer several years later. (*Id.* ¶ 13.) A later assignment, Defendants urge, is prohibited by section 8.12(g) of the MSTA, which by its terms bars the Trust's Securities Administrator from allowing any assignment that would adversely affect the Trust's REMIC status. (*Id.* ¶ 14.)

Citibank points out that it has possession of the Note that Defendants signed when they borrowed funds to buy the property in April 2007. That Note, indorsed in blank by the original lender, is payable to the bearer and gives the holder the right to enforce the related security interest under Illinois law. (Pl.'s Resp. at 1-2.) The terms of the Note authorize MERS–identified in the Defendants' Mortgage as nominee for the lender–to foreclose and sell the property. (*Id.* at 6.) Once MERS had recorded the Mortgage, the lender could then transfer the Note without having to record an assignment of the Mortgage; instead, MERS could execute an assignment of the

4

Mortgage to any entity which held the Note, authorizing that entity to foreclose. (*Id.*) As Plaintiff points out, Defendants have not established any reason for a challenge to the MERS officer's authority to assign the Mortgage. (*Id.* at 7.) In any event, Plaintiff insists that Defendants may not challenge Plaintiff's standing based on alleged violations of the Master Servicing and Trust Agreement, as Defendants are not parties to that agreement. (*Id.* at 3-4.)

Prior to exploring the merits of this case, the court addresses the parties' purported dispute concerning the choice of law. Defendants argue that New York trust law governs the question of whether the Trust ever obtained control over the Note and Mortgage. Defendants also point out that Illinois law is consistent with New York law in recognizing that the rights of a trustee under a corporate indenture are defined by the terms of the trust agreement. (Defs.' Mot. ¶¶ 5, 9.) Indeed, though Defendants have not cited to it, the Master Servicing and Trust Agreement states "[t]he Depositor does hereby establish, pursuant to the further provisions of this Agreement and the laws of the State of New York, an express trust . . . ." (MSTA Art. II § 2.01(c).)

Citibank argues that Illinois law governs the foreclosure of a mortgage on property in this state (Pl.'s Resp. at 2), and the court notes that the Mortgage states that it "shall be governed by federal law or the law in which the property exists." (Mortgage at 11.) The court concludes that both parties are correct: New York law governs the creation of the Trust that held the Note, and Illinois law governs the foreclosure of the Mortgage. Any dispute about which law is controlling is inconsequential, however. *See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation*, No. 05-7090, 2008 WL 630883, at * 6 (N.D. Ill. Mar. 5, 2008) ("Illinois choice-of-law principles dictate that, in the absence of an actual conflict, Illinois substantive law shall govern as the law of the forum.") (citing *SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 374 Ill. App.3d 1, 13, 872 N.E.2d 10, 21 (1st Dist. 2007)). As neither party has suggested that the case would be decided differently if the law of another jurisdiction controlled, the court need not address the matter further.

Defendants have challenged Citibank's standing in the present case. Defendants contend

that the Note they signed was not properly assigned to the Trust, a pool of mortgage loans for which Plaintiff is Trustee. The Trust was created on July 1, 2007, pursuant to the terms of a Master Servicing and Trust Agreement. Defendants point out that the endorsement of the Note is undated and not notarized. Defendants further suggest that the Assignments of the Mortgage from MERS (the lender's nominee) to Ocwen, and from Ocwen to Plaintiff, are suspect.

The court finds none of Defendants' challenges supported by the law. Under Illinois law, a person may file suit seeking judicial foreclosure if "that person is the holder of an indebtedness . . . ." *See* 735 ILCS 5/15-1208. To establish standing, Plaintiff need only demonstrate that it is in possession of the note secured by a mortgage on the date the complaint was filed. *See Cogswell v. CitiFinancial Mortg. Co., Inc.*, 624 F.3d 395, 402 (7th Cir. 2010) (citing 810 ILCS 5/1-201(b)(21(A).) In this case, the Note signed by the Wilberns was indorsed "in blank." Illinois law dictates that, "if an indorsement is made by the holder of an instrument and is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." 810 ILCS 5/3-205(b); *see also Quarles v. JP Morgan Chase Bank, N.A.*, No.11-CV-08582, 2012 WL 3890134, at *2 (N.D. Ill. Sept. 7, 2012) (recognizing Chase Bank's right to enforce a note indorsed in blank). Defendants offer no basis to challenge to the validity of the Note; therefore, under Illinois law, Citibank is the holder of an enforceable instrument despite the lack of date or notarization.

Defendants' challenges to the validity of the MERS and Ocwen Assignments fare no better. The suggestion that the Assignments were "an exercise in Robo-signing" (Defs.' Mot. ¶ 12) is unsupported. On November 30, 2011, MERS, as nominee for American Mortgage, assigned the rights associated with the Mortgage to Ocwen. (*See* MERS Assignment.) The MERS Assignment was signed by Noemi Morales, an employee of MERS, and notarized by Cory Messer. (*Id.*) Several weeks later, on December 27, 2011, Ocwen assigned the rights associated with the Mortgage to Citibank. (*See* Ocwen Assignment.) The Ocwen Assignment was signed by Clara

6

Taborda, an employee of Ocwen, and notarized by Yamali Martinez. (*Id.*) Nothing about these circumstances suggests that the individuals involved signed papers without reviewing the relevant documents.

Defendants also argue that the Note was not properly made a part of the Trust. As Citibank observes, however, case law establishes that a borrower who is not a party to the trust agreement has no standing to raise this challenge. A borrower made the same argument in *Long v. One West Bank, FSB*, No. 11 C 703, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 4, 2011), and the court swiftly rejected it:

> Plaintiffs also argue that the assignment of the power of sale from MERS to [the bank] was not valid because the Assignment of Deed was invalid. Plaintiffs argue that the Assignment of Deed was not valid because it did not comply with the [trust agreement] and because it was executed after the trust that [the bank] represents was closed. Initially, the court notes that, to the extent that Plaintiffs seek to base claims on violations of the [trust agreement] Plaintiffs were not parties to [that agreement] and lack any standing to assert such claims.

2011 WL 3796887, *4. The court went on to observe that compliance or noncompliance with the trust agreement is not relevant to the validity of a loan's assignment. The *Long* court relied on *Anderson v. Countrywide Home Loans*, No. 10-2685, 2011 WL 1627945, at *4-5 (D. Minn. Apr. 8, 2011), in which the court concluded that "an assignment's compliance with the chain of assignment mandated by a [trust agreement] was not relevant to the validity of the assignee's interest," and that the borrowers lacked "standing to challenge the validity of the assignment to the Trust because they are not parties to the [trust agreement]." *See also Butler v. Deutsche Bank Trust Co.*, No. 12-10337, 2012 WL 3518560 (D. Mass. Aug. 14, 2012) ("a mortgagor does not have standing to challenge a foreclosure on the basis of the non-compliance of an assignment with the provisions of the PSA governing a foreclosing trust"); *Greene v. Home Loan Serv., Inc.*, No. 09-719, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("[P]laintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324–25 (B.A.P. 1st Cir.

2011) (rejecting argument by debtors that mortgage assignment was invalid based upon non-compliance with PSA, as debtors were neither parties, nor third-party beneficiaries, of the PSA); *cf. Cooper v. Bank of New York Mellon*, No. 11-00241, 2011 WL 3705058, at * 17 (D. Haw. Aug. 23, 2011) (dismissing breach of contract count brought by delinquent mortgagors for breach of trust servicing agreement because mortgagors were not third-party beneficiaries of that agreement and therefore lack standing to enforce its terms).

Earlier this year, a court in this district addressed a borrower's motion to set aside a foreclosure on the basis that the bank that filed the action purportedly lacked standing. *See Bank of New York Mellon v. Fleming*, No. 11 C 3573, 2013 WL 241153, at * 2 (N.D. Ill. Jan. 18, 2013). The borrowers in that case argued, as Defendants do, that the note was not properly indorsed and that the lenders did not meet the requirements set forth in a trust servicing agreement. *Id.* Denying the defendants' motion, the court observed that under Illinois law, an instrument indorsed in blank is payable to the bearer. *Id.* The court also agreed with the plaintiff's argument that even if the assignments violated a trust servicing agreement, the defendants' obligations under the note and mortgage were unaffected. *Id.* Like other courts, the court in *Bank of New York Mellon* concluded that defendants, who were not party to the trust agreement, lacked standing to contest the assignments under the terms of that agreement. *Id.* (citing *Livonia Prop. Holdings v. 12840-12976 Farmington Road Holding*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010)).

This court adheres to the weight of authority on this issue. Citibank has provided the court with a copy of the Mortgage, the Note, an in-blank indorsement, and facially valid Mortgage Assignments. This production is all that is necessary to establish Citibank's standing, and Defendants have not rebutted Citibank's allegation that it is entitled to foreclose on the property.

Defendants' remaining challenges bear only brief discussion. First, Defendants contend that Citibank did not obtain possession of the Mortgage until after the foreclosure was commenced. (Defs.' Reply [28], ¶ 4.) Courts in both New York and Illinois have held that a party seeking to

foreclose must be the holder of the mortgage in order to file suit. The circumstances in the cases cited by Defendants involved mortgage assignments that were made after the date the suit was filed. *See Wells Fargo Bank, N.A. v. Marchione*, 69 A.D. 3d 204, 209-10, 887 N.Y.S.2d 615, 619 (N.Y. App. Div. 2009); *cf. Deutsche Bank Nat. Trust Co. v. Gilbert*, 2012 Ill. App.2d 120164, 982 N.E.2d 815 (2d Dist. 2012) (though under Illinois law an assignment can document a transfer that occurred prior to the date on which the assignment was executed, a foreclosure plaintiff must present competent evidence that it has standing at the time the foreclosure action is filed). In one instance, the complaint actually referred to the mortgage as "to be assigned." *LaSalle Bank Nat'l Ass'n v. Ahearn*, 59 A.D. 3d 911, 875 N.Y.S. 2d 595, 597 (N.Y. App. Div. 2009). Here, each relevant Mortgage Assignment was executed prior to the filing of Plaintiff's complaint. (*See* MERS Assignment; Ocwen Assignment.)

Second, Defendants reprise their challenge to the propriety of the assignment of their loan under the terms of the MSTA and argue that an improper assignment would have serious adverse tax consequences. (Defs.' Mot. ¶ 14; Defs.' Reply ¶ 4.) This concern, if valid, does not affect Citibank's right to proceed with the foreclosure; a trust's own violations of the Internal Revenue Code might be a matter of concern for the trust's investors, but they do not serve as a basis for opposing another party's foreclosure attempts. *See Bank of America, N.A. v. 3301 Atlantic, LLC*, No. 10-CV-5204, 2012 WL 2529196, at *8 (E.D.N.Y. June 29, 2012); *In re Samuels*, 415 B.R. 8, 22 (D. Mass. 2009) ("Even if [an improper assignment] were somehow violative of the PSA, giving rise to unfavorable tax . . . consequences, neither the PSA nor those consequences would render the assignment itself invalid.")

One final note: as the court understands Defendants' arguments, they revolve around an assertion that the Mortgage was not properly assigned to the REMIC trust. For the reasons explained above, the court concludes that Defendants cannot object to Plaintiff's standing based on any such impropriety. In addition, the court's own research suggests that Defendants' concerns

about the alleged invalid assignment may lack foundation. Securities and Exchange Commission regulations require Trust officials to file a Prospectus with the SEC. Copies of the relevant Prospectus are available on line, and appear to reflect that Defendants' Mortgage (Number 226-521869) was part of the Trust at the time of its creation in 2007.[3] This information satisfies the court that the loan at issue in this case was included in GSAA Home Equity Trust 2007-8 at that Trust's inception.

## **CONCLUSION**

Defendants' motion to dismiss [24] Plaintiff's foreclosure action for lack of standing is denied.

ENTER:

Dated: March 26, 2013

*[signature]*

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3] *See* Filing under Securities Act Rules 163/433 of free writing prospectuses *available at* http://www.sec.gov/Archives/edgar/data/1407556/000090514807005275/0000905148-07-005275.txt.