# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-8, ASSET-BACKED CERTIFICATES, SERIES 2007-8,    ) ) ) ) ) | |
|      Plaintiff,   ) ) | |
|      v.   ) ) | No.  12 C 755 |
| MICHAEL ANTHONY WILBERN; SANDRA D. WILBERN; PNC BANK, N.A., SUCCESSOR IN INTEREST TO NATIONAL CITY BANK; ILLINOIS DEPARTMENT OF REVENUE,   ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
|      Defendants.   ) | |

## MEMORANDUM OPINION

Plaintiff, Citibank, N.A. ("Citibank") has sued Defendants Michael Anthony G. Wilbern and Sandra D. Wilbern for default on a promissory note, and seeks to foreclose on a home in Wadsworth, Illinois.  Defendants stopped making monthly payments in October 2010, and in February 2012, Plaintiff filed this foreclosure action.  Defendants' substantial indebtedness is undisputed, but they have challenged Plaintiff's right to foreclose on a number of procedural grounds.  For the reasons explained here, all but one of Defendants' objections are overruled. Because Plaintiff has not established that it mailed the statutorily-required notice of default, however, the court is unable to enter a judgment of foreclosure.  Defendants' motion to strike various exhibits supporting Plaintiff's summary judgment motion [50] is granted in part and denied in part.  Plaintiff's motions for summary judgment [45] and to appoint a special commissioner [49] are denied without prejudice.

## BACKGROUND

Most of the facts are undisputed. On April 18, 2007, American Mortgage Network, Inc. ("American Mortgage") made a loan to Defendant Michael Wilbern in the amount of $645,000. (Interest-Only Period Fixed Rate Note, Ex. 1 to Pl.'s 56.1 Statement [46], hereinafter "Note," at 1; Defs.' Resp. to Pl.'s 56.1 Statement [76] ¶ 1.) In exchange, Mr. Wilbern executed a promissory note in favor of American Mortgage, agreeing to pay the principal plus interest on the unpaid principal at an annual rate of 7.5% as well as taxes, insurance, and other escrow items. (Defs.' Resp. to Pl.'s 56.1 ¶¶ 1, 3, 4, 10.) A single page located after the Note and before a document titled "Planned Unit Development Rider" appears to be the indorsement, and states:

> PAY TO THE ORDER OF
>
> Without Recourse
> American Mortgage Network, Inc.
> DBA AmNet Mortgage

The document bears the signature of Deborah Picchiotti, who is identified as "Post Closing Supervisor." Also on April 28, 2007, both Defendants executed a security instrument, that is, a mortgage for a residence located at 16816 Cherrywood Lane, Wadsworth, Illinois 60083.[1] (Mortg., Ex. 2 to Pl.'s 56.1; Defs.' Resp. to Pl.'s 56.1 ¶¶ 6–7.) The mortgage identifies American Mortgage as the "Lender," and MERS, Inc. ("Mortgage Electronic Registration Systems, Inc.") both as "nominee" for American Mortgage and its "successors and assigns," and as the "mortgagee." (Mortg. at 1, 3.) The mortgage document further provides that it "secures to Lender: (i) the repayment of the Loan . . . ; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note." (*Id.* at 3.) On May 29, 2007,

---

[1]     Defendant Michael Wilbern alone signed the Note (*see* Note at 3), but both Defendants Michael and Sandra Wilbern signed the Mortgage. (*See* Mortgage at 14.)

MERS, Inc., acting as nominee for American Mortgage, recorded its interest in the mortgage with the Lake County Recorder of Deeds.[2] (Pl.'s 56.1 ¶ 5.)

Defendants stopped making monthly payments in October 2010, and have not made a payment since then, at least through February 14, 2014. (Defs.' Resp. to Pl.'s 56.1 ¶¶ 11, 15.) The Mortgage, provides that if, after receiving notice of their default, Defendants failed to cure it in the specified time, then "Lender at its option may require immediate payment in full of all sums secured by [the] Security Instrument without further demand and may foreclose [the] Security Instrument by judicial proceeding." (Mortg. ¶ 22.) Plaintiff asserts that it mailed Defendants "[a] notice of default and acceleration, including a counseling notice" on August 9, 2011 (Pl.'s 56.1 ¶ 16), but Defendants claim that they did not receive the notice. (Defs.' Resp. to Pl.'s 56.1 ¶ 16) (citing Michael Wilbern Aff., Ex. C to Defs.' 56.1 [77], ¶¶ 3–5.) On February 2, 2012, Plaintiff filed this action to foreclose its mortgage and recover an outstanding balance of $769,943.33, with interest accruing on unpaid principal at a rate of $134.12 per day, as well as "attorney's fees, foreclosure costs, late charges, advances, and expenses incurred." (Compl. [1]; Pl.'s 56.1 ¶ 17.) Defendants submitted a Making Home Affordable Program ("HAMP") Request for Mortgage Assistance with Ocwen Loan Servicing, Inc. ("Ocwen")[3] (as servicer) on July 22, 2013, though the parties dispute whether the application was complete. (Pl.'s Resp. to Defs.' 56.1 [80] ¶ 15; Defs.' 56.1 ¶ 15.) Plaintiff claims that "it informed Defendants['] counsel of the missing documents on February 11, 2014 via email," and, as of February 28, 2014, it has not received any additional documents. (Pl.'s Resp. to Defs.' 56.1 ¶ 15.)

---

[2]     Defendants contend that MERS, Inc. recorded American Mortgage's interest in the mortgage and not its own. The difference is inconsequential, as Defendants admit (and the record shows) that MERS, Inc. was acting as nominee for American Mortgage. A nominee is "[a] person designated to act in place of another," or "[a] party who holds bare legal title for the benefit of others . . . ." BLACK'S LAW DICTIONARY (9th ed. 2009).

[3]     MERS, Inc., as nominee for American Mortgage, assigned Ocwen the Mortgage in November 2011, Plaintiff claims, and Ocwen then assigned the Mortgage to Plaintiff in December 2011. (Pl.'s 56.1 ¶¶ 12–13.) Presently, Plaintiff asserts, Ocwen is the "loan servicer and agent of [Plaintiff]." (Pl.'s Resp. to Defs.' 56.1 ¶ 1; *see also* Pl.'s Reply at 5.)

As noted, Defendants contend they did not receive the required notice of default. They argue, in addition, that Plaintiff did not own and possess the Note when this suit was filed, and urge that the Mortgage was not properly assigned from American Mortgage to Plaintiff. Plaintiff asserts that it "owned the Note and had possession of the Note" when the suit was filed (Pl.'s 56.1 ¶ 14) (citing Compl. & Lisa Negron Aff., Mar. 1, 2012, Ex. 5 to Pl.'s 56.1), but Defendants flatly deny that Plaintiff had possession, noting that Negron's affidavit "says nothing about possession." (Defs.' Resp. to Pl.'s 56.1 ¶ 14.) With respect to the mortgage assignment, Plaintiff claims that on November 30, 2011, MERS, Inc., acting as nominee for American Mortgage, assigned the mortgage to Ocwen. (Pl.'s 56.1 ¶ 12.) Ocwen then assigned the mortgage to Plaintiff on December 27, 2011. (*Id.* ¶ 13.) But Defendants assert that because American Mortgage dissolved on June 2, 2009, before the first alleged assignment, it could not have assigned its interest in the mortgage, and therefore, both assignments are "invalid." (Defs.' Resp. to Pl.'s 56.1 ¶¶ 12–13.) Additionally, Defendants claim that the signatures of the corporate representatives and the notaries who executed and signed the assignments "bear[] no resemblance" to their signatures on their notary applications. (Defs.' 56.1 ¶¶ 8–13.)

Jurisdiction is proper under 28 U.S.C. § 1332. The parties are diverse in citizenship: both Defendants are Illinois citizens, and Plaintiff Citibank is chartered in New York, where its headquarters and principal place of business are located. The amount in controversy, at least $769,943.33, well exceeds the jurisdictional minimum. (Compl. ¶ 2; Pl.'s 56.1 ¶ 17; Defs.' Resp. to Pl.'s 56.1 ¶ 1.) Plaintiff has moved for summary judgment, and to appoint a special commissioner, and Defendants have filed a motion to strike exhibits 1, 2, 5 and 6 filed in support of Plaintiff's motion for summary judgment. The motions are fully briefed.

<u>DISCUSSION</u>

I.    **Standard of Review**

The court will grant summary judgment where the moving party demonstrates that "there is no genuine dispute as to any material fact," and that the moving party "is entitled to judgment

as a matter of law." FED. R. CIV. P. 56(a). The court will "construe the facts and draw all reasonable inferences in favor of the non-moving party." *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842, 847 (7th Cir. 2013). "Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Inferences "supported by only speculation or conjecture," or "[m]ere metaphysical doubt as to the material facts" do not create a genuine dispute. *Carroll*, 698 F.3d at 564–65 (quoting, respectively, *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In order to show the absence of any issue of material fact, the moving party may rely on "materials in the record, including . . . affidavits or declarations, . . . or other materials," so long as the evidence relied upon is admissible in evidence. FED. R. CIV. P. 56(c)(1)(A), (2). Rule 56 requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). The non-moving party may move to strike supporting evidence that would be inadmissible at trial.

## II.    Defendants' Motion to Strike

Defendants move to strike Lisa Negron's affidavit, the Note, the Mortgage, and the Notice of Default letter (Ex. 6 to Pl.'s 56.1) as well as "the corresponding sections of Plaintiff's 56.1"—essentially, all evidence offered in support of Plaintiff's summary judgment motion. Defendants argue that Negron lacks personal knowledge to testify, and that all of the exhibits are unauthenticated. (Defs.' Mot. to Strike at 1.)[4] The court will address each document in turn.

---

[4]    Notably, most of the "corresponding" paragraphs in Plaintiff's 56.1 that Defendants challenge here are paragraphs that Defendants have admitted in their response. (*Compare* Defs.' Mot. to Strike at 3–5 (asking to strike Pl.'s 56.1 ¶¶ 1–11, 14, 15, 17), *with* Defs.' Resp. to Pl.'s 56.1 (admitting ¶¶ 1–11, 15).)

## A.    Negron's Affidavit

Lisa Negron, identified as an Ocwen "Senior Contract Manager," states in her affidavit that she is familiar with the records Ocwen uses to service its loans, and, after reviewing Ocwen's servicing records, she concludes that Plaintiff Citibank "owns Defendant[s'] Note and Mortgage." (Negron Aff. ¶¶ 1–2, 4.)   Based on her review of the servicing records, Negron identifies the sums of money that Defendants owe in principal, escrow, late charges, unpaid interest, and other expenses as of February 14, 2012, and explains that Defendants' total indebtedness is $769,943.33. (*Id.* ¶¶ 5–6.)   Defendants argue that Negron's affidavit does not comply with Federal Rule of Civil Procedure 56(c)(4)[5] because she lacks personal knowledge to testify about Defendants' Note and Mortgage. (Defs.' Mot. to Strike at 2.)    Specifically, Defendants contend, Negron had no personal knowledge of "what went on with any particular individual's loan or even knowledge as to how mortgage records are kept," and therefore, they urge, she is not qualified to testify or to authenticate the accompanying business records. (*Id.* at 2–3.)   Plaintiff responds that Negron regularly performs job duties involving business records, has training and knowledge of the processes to create these records, and has sufficient personal knowledge to testify about the content of the records. (Pl.'s Reply [79] at 2–4.)

A party may offer an affidavit as evidence in support of a summary judgment motion so long as the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and shows that the affiant . . . is competent to testify." FED. R. CIV. P. 56(c)(4). "[S]tatements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet this requirement." *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).   Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is inadmissible absent an exception. FED. R. EVID. 801(c), 802.

---

[5]    Defendants cite Federal Rule of Civil Procedure 56(e), which was amended in 2010 and now corresponds to Rule 56(c)(4).

Rule 803(6) recognizes an exception for business records rendering those records admissible so long as "the custodian or another qualified witness" can establish that

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity[,]

and that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 775–77 (7th Cir. 2006).

The court is satisfied that Negron has sufficient personal knowledge to testify about the note and mortgage records and is a "qualified witness" for the purposes of Federal Rule of Evidence 803(6). Negron's affidavit states that she is a senior contract manager with Ocwen, that she is "familiar" with Ocwen's records through her job duties, and that she has "training and general knowledge" of the processes to create and maintain these records. (Negron Aff. ¶¶ 1–3.) Negron further testifies that her personal knowledge is "based on [her] review" of records pertaining to Defendants' loan. (*Id.* ¶ 1.) Defendants complain that the affidavit fails to demonstrate that Negron has "knowledge of record keeping," in part, because it does not describe the specifics of Negron's job duties or employment history (Defs.' Mot. to Strike at 3), but the absence of this information does not defeat her status as a knowledgeable custodian. Defendants also argue that Negron is not qualified to testify about Ocwen's records because she is not a "corporate officer," but Rule 803(6) does not so limit who may authenticate business records. FED. R. EVID. 803(6) (business records admissible through "the testimony of the custodian or another qualified witness").

With objections to Ms. Negron's affidavit dispatched, the court concludes that the note and mortgage records themselves are admissible under the business records exception. Negron explained that Ocwen's records "typically include electronic data compilations and imaged documents pertaining to the loans it services." (Negron Aff. ¶ 2.) Based on her training

and knowledge of the record processes, Negron confirmed that the records "were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records;" and "are kept in the ordinary course of the business activity regularly conducted by Ocwen;" and that it is Ocwen's "regular practice . . . to make and update" these records. (*Id.* ¶ 3.) Nor have Defendants shown that either Negron's testimony or the business records "indicate a lack of trustworthiness." FED. R. EVID. 803(6)(E). Defendants describe Negron's affidavit as a "fill-in-the blank Affidavit," in part because Negron's name and title are "rubber-stamped onto the affidavit." (Defs.' Mot. to Strike at 2.) Whatever the merits of Negron's affidavit practices may be, there is no indication that the Affidavit is inaccurate or untrustworthy.

Finally, Defendants argue that the records included with Negron's affidavit are inadmissible summaries of the "actual business record." (Defs.' Mot. to Strike at 3) (citing FED. R. EVID. 1006.) It is not clear that the "Affidavit of Debt" attached to Negron's affidavit is a summary of other records; it appears instead that it is itself a business record regularly maintained by Ocwen. (*See* Negron Aff. ¶¶ 2, 5) (stating that the "[s]ervicing [r]ecords typically include electronic data compilations and imaged documents," and that the affidavit of debt is "a true and correct print-out generated from Ocwen['s] regularly maintained" records.) Even if the Affidavit of Debt is a summary created for this litigation, it is admissible if the underlying note and mortgage records are business records. *See Deutsche Bank Nat'l Trust Co v. Tapla*, No. 11-C-4338, 2013 WL 4804855 at *3 (N.D. Ill. Sept. 9, 2013) (concluding that an affiant's testimony about contents of business records was admissible under Federal Rules of Evidence 803(6) and 1006); *cf. Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (upholding district court's decision to strike summary, a list of financial transfers prepared by plaintiff, because plaintiff "did not establish the admissibility of the records on which the summaries were allegedly based or authenticate the summaries in any way").

The court denies Defendants' motion to strike Negron's affidavit and the "corresponding" paragraphs in Plaintiff's 56.1. Negron's affidavit and the accompanying "Affidavit of Debt" are admissible under the business records exception.

**B.     The Note, Mortgage, and Notice of Default Letter**

Defendants also move to strike the Note, Mortgage, and Notice of Default letter as unauthenticated. Under Illinois foreclosure law, a party seeking to foreclose a mortgage must, as part of its complaint, attach a copy of the mortgage and the note. Such exhibits are presumed to be "true and correct copies . . . and are incorporated and made a part of the complaint by express reference." 735 ILCS 5/15-1504(a)(2). Defendants argue that the Negron affidavit and Plaintiff's complaint "do not authenticate" either exhibit. (Defs.' Mot. to Strike at 5.) Defendants also urge that Negron is not qualified to testify about Ocwen's ownership of the Note or Mortgage. (*Id.* at 4–5.) As discussed above, the court has concluded that Negron is qualified to testify to Ocwen's business records under the business records exception, which likely include both the Note and the Mortgage. Regardless, Defendants present no evidence that casts doubt on the statutory presumption. Without such evidence, the court presumes that the Note and Mortgage provided by Plaintiff here are "true and correct copies," and denies Defendants' motion to strike.

Illinois foreclosure law does not recognize such a presumption for a notice of default letter, however. As Defendants assert, Plaintiff has failed to authenticate that exhibit. The moving party, on summary judgment, may offer "any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Woods v. City of Chicago*, 234 F.3d 979, 987–88 (7th Cir. 2000) (quotations and citations omitted); *see Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 94 (7th Cir. 2012). But the "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006). Negron's affidavit makes no mention of the Notice of Default letter, and Plaintiff provides no

other affidavit to authenticate it. No witness provides a basis for the conclusion that it was mailed in the regular course of the lender or loan servicer's business. As a result, the court grants Defendants' motion to strike the Plaintiff's Exhibit 6, the Notice of Default letter.

## III.    Summary Judgment

The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1504, outlines the pleading requirements for a foreclosure action. The complaint in this case met those requirements, and most of Plaintiff's allegations are undisputed: on April 18, 2007, Defendants executed a mortgage with American Mortgage on their residence in Wadsworth, Illinois, which secured a note for $645,000, and on May 29, 2007, MERS, Inc., as nominee for American Mortgage, recorded the Mortgage in Lake County. (Defs.' Resp. to Pl.'s 56.1 ¶¶ 1, 5–7.) Defendants stopped making monthly payments on the Mortgage in October 2010 (*id.* ¶ 11, 15), and now owe $769,943.33, an amount rising each day by $134.12 in interest and other expenses. (Pl.'s 56.1 ¶ 17.)

As described briefly earlier, the only disputed issues are whether Plaintiff has the "capacity" to bring the foreclosure action as holder of the note, and owner of the mortgage, *see* 735 ILCS 5/15-1504(a)(3)(N), and whether Plaintiff mailed Defendants a notice of default. 735 ILCS 5/15-1502.5(b)–(c).

### A.    Plaintiff is the Holder of the Note

Plaintiff alleges that it is the holder of the Note because it is in possession of the Note, which is indorsed in blank. (Pl.'s Br. in Supp. of Mot. for Summ. J. [47], hereinafter "Pl.'s Mot.," at 2.) In challenging this assertion, Defendants cite the deposition testimony of Ocwen employee Frederick Denson, who testified that "[t]he original note is stored in [Ocwen's] vaults . . . in West Palm Beach, Florida," and that Ocwen has "possession of the note" and "is

the holder of the note."[6] (Frederick Denson Dep., Nov. 26, 2013, Ex. A-1 to Defs.' 56.1, hereinafter "Denson Dep. 1," at 24:15–18, 29:8–9; Frederick Denson Dep., Dec. 20, 2013, Ex. A-2 to Defs.' 56.1, hereinafter "Denson Dep. 2," at 47:24–48:2.) As Defendants understand this testimony, Ocwen (not Plaintiff) has possession of the Note, and the Note was not transferred through either purported mortgage assignment. (Defs.' Resp. to Pl.'s Mot. for Summ. J. [72], hereinafter "Defs.' Resp.," at 7–8; Defs.' 56.1 ¶¶ 1–2, 4.)

Under the Illinois Uniform Commercial Code ("IL-UCC"), a "holder" has the right to enforce an instrument. 810 ILCS 5/3-301. The IL-UCC defines a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 810 ILCS 5/1-201(21). A negotiable instrument may be transferred to another party by delivery to another "for the purpose of giving . . . the right to enforce the instrument." 810 ILCS 5/3-203(a). An instrument may contain a special indorsement that "identifies the person to whom" it is payable; alternatively, it may contain a "blank indorsement," which renders it "payable to bearer" and negotiable "by transfer of possession alone." 810 ILCS 5/3-205(a)–(b). In an Illinois foreclosure action, "the mere attachment of a note to a complaint is *prima facie* evidence that plaintiff owns the note." *Rosestone Invs., LLC v. Garner*, 377 Ill. Dec. 616, 2 N.E.3d 532, 540 (1st Dist. 2013).

In this case, Plaintiff attached a copy of the Note to the complaint. (Compl. Ex. B.) The copy is presumed to be "true and correct," and thus constitutes *prima facie* evidence of Plaintiff's possession and ownership. *Rosestone Invs.*, 2 N.E.3d at 540. As the Note does not identify a person to whom it is payable, it is payable to bearer, in this case, Plaintiff. (*See* Note at 4.) In short, Plaintiff has presented *prima facie* evidence that it is "holder" of the Note.

---

[6] Defendants chose not to cite to Denson's testimony that Ocwen is "not the holder of the note. We have possession of the note," or that "[t]he owner of the note would be [Citibank]." *See* Denson Dep. 1 at 29:14–16; Denson Dep. 2 at 48:3–4.

Defendants have not rebutted this evidence. Instead, they have merely denied "in [their] unverified answer" that Plaintiff is the holder, and suggested that the denial shifts the burden of proof to Plaintiff. (Defs.' Resp. at 10.) Without supporting evidence, however, Defendants' denial does not create an issue of fact, in light of the presumptions discussed above, *see* 735 ILCS 5/15-1504(a)(2); *Rosestone Invs.*, 2 N.E.3d at 540, and Negron's affidavit to the contrary. (Negron Aff. ¶ 4); *see also Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir. 1997) ("Valance cannot succeed in creating a factual dispute, however, solely by pointing to allegations in his pleading; he must instead produce evidence showing that there is a disputed issue for trial.").

Nor does the deposition testimony of Frederick Denson, cited by Defendants as evidence that Plaintiff does not have possession of the Note, create any genuine issue of material fact. Denson, an Ocwen loan analyst, testified that Ocwen has possession of the Note, which is stored in its vault in West Palm Beach, Florida. (Denson Dep. 1 at 5:22–6:1; 24:15–20; 28:16–23.) Defendants conclude this testimony establishes that Ocwen, and not Plaintiff, is the holder. (Defs.' Resp. at 7–8.) As Plaintiff notes, however, Ocwen is Plaintiff's agent, and possesses the Note on its behalf. (Pl.'s Resp. to Defs.' 56.1 ¶ 1; Pl.'s Reply at 5.) Defendants provide no evidence to the contrary, and Plaintiff's assertion is consistent with the circumstances here: Both Lisa Negron, the affiant testifying about Ocwen's business records of the Note and Mortgage, and Frederick Denson, are Ocwen employees. Yet Denson was identified by Citibank as its corporate representative for deposition. (*See* Defs.' Continued Notice of F.R.C.P. 30(b)(6) Corp. Dep. of Pl. Citibank, N.A. [65].) Additionally, the second assignment of the Mortgage identifies the assignor as Ocwen and the assignee as Citibank, but lists Citibank's address as "c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409." (Assignment of Mortgage (Ocwen to Citibank), Ex. 4 to Pl.'s 56.1, hereinafter "Assignment 2," at 2.)

In fact, when Defendants' attorney explicitly asked Denson, in his first deposition, whether Ocwen was the "holder" he replied, repeatedly, that Ocwen has "possession of the

12

note" but "we're not the holder of the note." (Denson Dep. 1 at 28:24–29:16.)  Then, in a second deposition, in response to the question "Is Ocwen then the holder of the note or the owner of the note?" Denson responded that "[Ocwen is] the holder of the note" and "the trustee" (Citibank) is the owner. (Denson Dep. 2 at 47:24–48:4; 56:20–23.)  As Plaintiff observes, Denson does not have the ability to identify who is the "holder" as the term is used here; what Denson's deposition testimony makes clear is that he, an Ocwen employee, makes a distinction between ownership and possession of the Note, and believes that Ocwen is not the Note's owner. Denson's deposition testimony, if anything, bolsters Plaintiff's contention that it is holder of the Note.

Defendants argue that this case is like *Kemp v. Countrywide Home Loans, Inc.*, 440 B.R. 624, 626–27 (Bankr. D.J.J. 2010) (applying N.J. UCC), where the debtor challenged a proof of claim filed by the mortgage loan servicer, Countrywide, on behalf of the Bank of New York. (*See* Defs.' Resp. at 8.)  The record showed that mortgage was transferred to Bank of New York as trustee, but that the Bank of New York had never received the note. 440, B.R. at 629, 630 n.10.  Citing *Dolin v. Darnall*, 115 N.J.L. 508, 181 A. 201 (N.J. E & A 1935), the bankruptcy court concluded that "[b]ecause the Bank of New York never had possession of the note, it can not qualify as a 'holder'." 440 B.R. at 630; *see also Marks v. Braunstein*, 439 B.R. 248, 250–51 (D. Mass. 2010) (party who never had possession of note could not sue to enforce it).  In the case before this court, however, Plaintiff bank *does* have possession of the note.  Notably, in *Dolin*, the plaintiff had sued to enforce two promissory notes signed by the defendants, but the court concluded that because plaintiff "was not in possession of the notes either personally or *by his agent*" at the time he filed the complaint, he "was not entitled to maintain the action." 115 N.J.L. at 510, 181 A. at 202 (emphasis added).  This language confirms that a holder may possess a note through its agent, as Plaintiff does in this case.

Defendants insist this is not good enough.  Citing *Locks v. North Towne National Bank of Rockford*, 115 Ill. App. 3d 729, 451 N.E.2d 19 (2d Dist. 1983), they urge that Plaintiff must have

physical possession of the note in order to enforce it. (Defs.' Resp. at 8.) *Locks* itself observed that "some jurisdictions have recognized" that a person may be a holder "through his agent's physical possession" of the instrument; it did not decide the issue. 115 Ill. App. at 732, 451 N.E.2d at 21. More recent Illinois cases demonstrate that in the foreclosure context, Illinois recognizes possession through an agent. *See FDIC v. Linn*, 671 F. Supp. 547, 553 (N.D. Ill. 1987) (discussing *Locks*, and holding that a party may establish that it is the "holder" through possession of the note by its agent); *see also Deutsche Bank Nat'l Trust Co. v. Christian*, No. 12-C-03613, 2013 WL 6283584 at *3 (N.D. Ill. Dec. 4, 2013) (observing that a foreclosure action in Illinois may be brought by "the legal holder of the indebtedness, a pledgee, an agent, the trustee under a trust deed or otherwise") (quoting 735 ILCS 5/15-1504(a)(3)(N)); *Mortgage Elec. Registration Sys., Inc. v. Barnes*, 406 Ill. App. 3d 1, 6, 940 N.E.2d 118, 124 (1st Dist. 2010) ("Illinois does not require that a foreclosure be filed by the owner of the note and mortgage," and "[a] plaintiff can maintain a lawsuit although the beneficial ownership of the note is in another person.").

Finally, citing three New York appellate court cases,[7] Defendants appear to argue that Negron's affidavit is insufficient evidence to establish that Plaintiff has possession of the Note. (Defs.' Resp. at 8–10.) This court has already concluded, as discussed earlier, that Negron's affidavit is admissible under the business records exception, FED. R. EVID. 803(6). That affidavit states that "[b]ased on [Negron's] review of Ocwen Loan Servicing, LLC's Servicing Records,

_____

[7]     In *Bank of America N.A. v. Bassman FTB, L.L.C.*, 366 Ill. Dec. 936, 981 N.E.2d 1 (2d Dist. 2012), the court stated that "we will apply New York law to determine whether the mortgages were validly transferred to the trust." Defendants interpret that language to mean that New York law also applies to establish whether Plaintiff is a holder of the Note. (Defs.' Resp. at 8–9) (citing *Bassman*, 366 Ill. Dec. at 941, 981 N.E.2d at 6.) Defendants raised this very issue in their motion to dismiss, however, and this court concluded that "New York law governs the creation of the Trust that held the Note, and Illinois law governs the foreclosure of the Mortgage." *Citibank, N.A. v. Wilbern*, No. 12-C-755, 2013 WL 1283802 at *3 (N.D. Ill. Mar. 26, 2013). As in their unsuccessful motion to dismiss, Defendants have not explained how the issue whether Plaintiff is a "holder" would be decided differently under New York law. The court reaffirms its March 2013 holding here, and will apply Illinois law to the foreclosure issues.

Plaintiff owns Defendant['s'] Note and Mortgage . . . ." (Negron Aff. ¶ 4.) In contrast, in the cases cited by Defendants, the New York courts concluded that the plaintiff did not have standing to bring a foreclosure action because the plaintiff had failed to prove, through affidavits or other evidence, that it had physical possession of the note when it filed suit. *See Homecomings Fin., LLC v. Guldi*, 969 N.Y.S.2d 470, 474, 108 A.D.3d 506, 508–09 (N.Y. App. Div. 2013) (affiant delivered the note to plaintiff during the action, and did not explain how it physically delivered the note); *Deutsche Bank Nat'l Trust Co. v. Haller*, 954 N.Y.S.2d 551, 100 A.D.3d 680, 682–83 (N.Y. App. Div. 2012) (denying summary judgment where plaintiff could not establish it had physical possession of the note); *Deutsche Bank Nat'l Trust Co. v. Barnett*, 931 N.Y.S.2d 630, 88 A.D.3d 636, 637–38 (N.Y. App. Div. 2011) (same). Defendants here are plowing familiar grounds: they challenged Plaintiff's standing in their motion to dismiss, but this court concluded that Citibank was the holder, and therefore, had standing. *Citibank, N.A.*, No. 12-C-755, 2013 WL 1283802 at *4. Negron's affidavit, in addition to the presumption that Plaintiff owns the Note by attaching it to the complaint, satisfies the court that Plaintiff is the holder, and Defendants have offered no evidence that would make this an issue of disputed fact.

## B. Plaintiff is the Owner of the Mortgage

Next, Defendants argue that Plaintiff does not own the Mortgage—another argument made, and rejected, earlier. (Defs.' Resp. at 11–13.) Plaintiff contends that it acquired equitable ownership of the Mortgage once it possessed the Note, and furthermore, that Ocwen assigned the Mortgage to Plaintiff in December 2011.[8] (Pl.'s 56.1 ¶¶ 12–13; Pl.'s Mot. at 5.) Defendants have no standing to challenge the assignment to the trust, Plaintiff contends, and have provided no evidence that the assignment was untimely or voidable. (Pl.'s Reply at 7–9.)

---

[8]   The second assignment document provides some indication that Ocwen may have become Plaintiff's agent at the time of the transfer; it identifies the assignor as Ocwen and the assignee as Citibank, and states that Citibank's address is "c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409." (*See* Assignment 2 at 2.)

Under Illinois law, "[t]he assignment of a mortgage note carries with it an equitable assignment of the mortgage by which it was secured." *Fed. Nat'l Mortg. Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 635, 732 N.E.2d 723, 727 (2d. Dist. 2000); *see also Moore v. Lewis*, 51 Ill. App. 3d 388, 392, 366 N.E.2d 594, 599 (1st Dist. 1977) ("Indeed a mortgage, which in this state is only regarded as a mere incident to the debt, is not assignable at law. It is the debt which is assigned, and the transfer of the debt carried with it the mortgage security.") (citations omitted). Here, Plaintiff is the holder of the Note, and consequently, under Illinois law, is also the equitable owner of the Mortgage.

Defendants fail in their effort to suggest that this is a disputed issue. As they did earlier, Defendants urge that Plaintiff does not own the Mortgage because it was assigned to the trust after it closed, in violation of New York law governing Real Estate Mortgage Investment Conduits ("REMIC"), and "in violation of the procedures intended to achieve bankruptcy remoteness."[9] (Defs.' Resp. at 11.) Defendants offer no reason for the court to reach a different conclusion than the one it reached earlier: that Defendants "cannot object to Plaintiff's standing based on any such impropriety," and that it appears from Citibank's Prospectus, filed with the SEC, that the mortgage was indeed part of the trust when it was created. *Citibank, N.A.*, No. 12-C-755, 2013 WL 1283802 at *6.

Defendants do cite recent case law recognizing a mortgagor's standing to challenge the validity of a mortgage assignment under Rhode Island or Massachusetts law. *See Cosajay v. Mortgage Elec. Registration Sys., Inc.*, C.A. No. 10-442-M, 2013 WL 5912569 (D. R.I. Nov. 5, 2013) (applying R.I. law) (citing *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289–91 (1st Cir. 2013) (applying Mass. law); *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349 (1st Cir. 2013) (same)). This court is not inclined to revisit its determination on this issue. If Defendant could establish that the assignment violated Citibank's MSTA or New York law governing

---

[9]     Defendants do not elaborate on the "procedures . . . to achieve bankruptcy remoteness" and the court, therefore, will not speculate as to its basis.

REMIC, such a violation would merely render the assignment voidable, and not void. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Adolfo*, No. 12-C-759, 2013 WL 4552407 at *3 (N.D. Ill. Aug. 28, 2013) (collecting cases, and holding that "a transfer that does not comply with a PSA is voidable, not void); *Bassman*, 366 Ill. Dec. at 944–45, 981 N.E.2d at 9–10 (applying New York law and concluding that a transfer in violation of the PSA is voidable, and that defendants lacked standing to challenge the transfer). And, as the court noted earlier, it appears from the SEC Prospectus that the mortgage indeed was assigned to the trust before it closed.[10] *Citibank, N.A.*, No. 12-C-755, 2013 WL 1283802 at *6 n.3.

Defendants also challenge the validity of the mortgage assignment from the original lender, American Mortgage, to subsequent assignees, Ocwen, and then to Plaintiff. These assignments are invalid, Defendants assert, because American Mortgage was dissolved in 2009, and therefore, MERS could not have been acting as nominee for American Mortgage when it assigned the Mortgage to Ocwen in 2011. (Defs.' Resp. at 12.) And, furthermore, Defendants urge, there are "discrepancies" between the assignors' and notaries' signatures on the assignment paperwork, and their signatures in their notary applications. (*Id.*) In response, Plaintiff argues that as nominee for American Mortgage, MERS did have the authority to assign the Mortgage, and that Defendants provide no evidence that the assignment did not take place before American Mortgage's dissolution. (Pl.'s Reply at 9.)

The parties' arguments about when the assignment purportedly took place are irrelevant here. Under Illinois law, once Plaintiff became the holder of the Note, it also acquired an

---

[10]    *See* Filing under Securities Act Rules 163/433 of free writing prospectuses *available* http://www.sec.gov/Archives/edgar/data/1407556/000090514807005275/0000905148-07-005275.txt (filed as of 7/30/2007). As the court understands it, Defendants also appear to protest this court's reliance on Citibank's Free Writing Prospectus because the Prospectus stated that the asset pools "are subject to modification and revision" and that "[t]he information contained in this material may not pertain to any securities that will actually be sold"—indicating that Citibank may have eliminated Defendants' mortgage loan from the trust before the trust closed. (Defs.' Resp. at 11.) But, other than speculation that the trust did not include Defendants' mortgage loan, Defendants have provided no evidence contradicting Plaintiff's claim that it owns the Mortgage.

equitable ownership of the Mortgage, and consequently, a right of enforcement. The relevant date for the purpose of seeking foreclosure is the date on which the action was filed. So long as Plaintiff was a holder of the Note at that time (February 2, 2012), when precisely before that date the Mortgage was assigned makes no difference to Plaintiff's right to proceed with foreclosure here. *See Earl v. MidFirst Bank*, No. 12-C-1026, 2012 WL 2503970 at *2 (N.D. Ill. June 28, 2012) (applying Illinois law and concluding that "the Mortgage itself did not need to be formally assigned in order for [the Note holder] to file the Foreclosure Action"); *Rosestone Invs.*, 2 N.E.3d at 540 (rejecting defendant's argument that because the mortgage assignment document was dated four days after plaintiff filed the foreclosure complaint, the plaintiff lacked standing as "[defendant] failed to show that the mortgage assignment . . . was not a mere memorialization of a previous transfer").

Nor is the court moved by Defendants' concerns that "discrepancies" in the signatures on the assignment documents raise an issue of material fact "as to whether [the assignments] were executed and notarized by the individuals who purported to sign and notarize them." (*See* Assignment of Mortgage (MERS, Inc. to Ocwen), Ex. 3 to Pl.'s 56.1, hereinafter "Assignment 1;" Assignment 2.) A written assignment is not necessary to transfer a mortgage, and "[e]ven when a written assignment exists, it may be a mere memorialization of an earlier transfer of interest." *Rosestone Invs.*, 2 N.E.3d at 540. The claimed "discrepancies" only challenge the written assignments; like the defendant in *Rosestone Invs.*, Defendants have failed to show that they were not "a mere memorialization of a previous transfer." 2 N.E.3d at 540.

Even assuming that these assignments did effectuate the transfer of the Mortgage, Defendants' speculation that there are discrepancies in the signatures is insufficient to create a genuine issue of fact for trial. The notaries public are commissioned by the State of Florida[11]

---

[11] Plaintiff argues for the application of Illinois law on the issue. (Pl.'s Mot. at 5; Pl.'s Reply at 9–10.) Defendants do not appear to challenge this. Their only discussion of any law relevant to notarization is a bewildering reference to "Statu[t]e 117.107" — bewildering because the language Defendants quote ("Once commissioned, the notary must sign precisely as

(Messer Comm'n Detail, Ex. E to Defs.' 56.1; Assignment 2 (Martinez)), but under Illinois law "[a] notary's function is simply to certify the validity of the signature; the notary does not attest to the validity of the statements made in the document itself." *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 293 (7th Cir. 1994). In Illinois, "[a] notary public's certificate of acknowledgement, regular on its face, carries a strong presumption of validity," and a party must provide "clear and convincing evidence" from a disinterested witness to overcome this presumption. *Butler*, 41 F.3d at 294–94 (citing *Witt v. Panek*, 408 Ill. 328, 333, 97 N.E.2d 283, 285 (1951)).

Defendants appear only to challenge the validity of the signatures in the assignment documents, and their suspicions about "discrepancies" are not "clear and convincing evidence" that the notary signatures, which certify the validity of the assignor signatures, are invalid. Both assignments were signed by a corporate representative, and a notary public, and include the notary public's signature, stamped name, and seal. (*See* Assignment 1; Assignment 2.)

Finally, Defendants claim that Plaintiff has failed to produce a "Mortgage Loan Schedule" reflecting Plaintiff's ownership of the Mortgage. (Defs.' Resp. at 12.) While such evidence would be persuasive, it is not necessary. Plaintiff has provided other satisfactory evidence: Plaintiff is holder of the Note, and therefore, is equitable owner of the Mortgage, and has produced two written assignments that appear to give it ownership of the Note.

## C. Defendants raise a genuine issue of material fact concerning the required notice

Finally, Defendants argue that Plaintiff has failed to provide any evidence that it mailed the required default notice. In support, they offer the affidavit of Mr. Wilbern, who testifies that he never received the notice. (Defs. Resp. at 13; Michael Wilbern Aff. ¶¶ 3–5.) Plaintiff

---

commissioned by the state of Florida, in the exact name appearing on the notarial commission certificate") (Defs.' Resp. at 12) appears nowhere in the cited statute. *See* FLA. STAT. § 117.107. Nor has the court been able to locate quotation's source — a Google search uncovered several blogs and news articles that contain the quotation with a citation only to "Florida law." In any event, the notary's own signature is not at issue here.

responds that it need not prove that Defendants received the notice, but only that the notice was mailed. (Pl.'s Mot. at 4–5.)

Before proceeding with a foreclosure of a residential mortgage in Illinois, but after the mortgagor has been delinquent for more than thirty days, the mortgagee must mail a notice to the mortgagor, which states[12]: that the mortgage loan is over thirty days past due, the mortgagor may seek "approved housing counseling," and the mortgagor has a thirty day grace period to cure the default. 735 ILCS 5/15-1502.5(b)–(c). "[S]ending the notice," under § 5/15-1502.5(c), means "depositing or causing to be deposited into the United States mail an envelope with first-class postage prepaid that contains the document to be delivered. The envelope shall be addressed to the mortgagor at the common address of the residential real estate securing the mortgage." 735 ILCS 5/15-1502.5(c).

Plaintiff correctly asserts that the Homeowner Protection Act, 735 ILCS 5/15-1502.5, requires only proof that Plaintiff mailed the notice, not that Defendants received it. (Pl.'s Reply at 10, citing *U.S. Bank, N.A. v. Ramos*, No. 11-C-2899, 2013 WL 1498996 at *6 (N.D. Ill. Apr. 11, 2013); *Bank of N.Y. Mellon Trust Co. v. Weatherspoon*, No. 11-C-3495, 2012 WL 1430361 at *3 (N.D. Ill. Apr. 25, 2012).) In *Ramos*, a foreclosure action, plaintiff attached a copy of the notice of default letter to its Rule 56.1 statement, as evidence that it mailed the required letter to defendants, and defendants argued that this alone was not evidence that the letter was actually mailed or received. No. 11-C-2899, 2013 WL 1498996 at *5. Plaintiff then provided a U.S. Postal Service confirmation showing that the letter had been mailed, that it was left at the delivery address, and that it had not been claimed. *Id.* On this record, satisfied that the notice of default letter had been mailed, the court entered summary judgment. *Id.* The court also noted that as the mortgage terms, like 735 ILCS 5/15-1502.5(c), required only that plaintiff mail the letter, "even if Defendants did not receive the Notice of Default, that would not prevent a

---

[12]     Illinois' Homeowner Protection Act contains express, mandatory language that the notice must include. *See* 735 ILCS 5/15-1502.5(c).

foreclosure judgment." *Id.* at *6. Similarly, the plaintiff in *Weatherspoon* "provided evidence" that it sent a notice of default letter to the defendant by certified mail. No. 11-C-3495, 2012 WL 1430361 at *2. The defendant claimed that he did not receive the letter, but failed to provide any evidence contradicting plaintiff's proof that the letter was mailed. Again, the court granted plaintiff summary judgment. *Id.* at **2–3.

In this case, however, Plaintiff has presented a copy of the purported Notice of Default letter, but has offered no admissible evidence that it was mailed. Ms. Negron's affidavit makes no specific mention of the letter, and does not even comment on any regular business practice on the part of Plaintiff or its agents to mail such notices or to preserve copies. Defendants have denied receiving the notice, and though that denial would not defeat a showing of mailing, it certainly put Plaintiff on notice that this matter is contested. Without more than the unsupported allegation, there remains a genuine issue of material fact concerning whether Plaintiff, in fact, mailed the letter.

The court recognizes that there may be no prejudice to Defendants from the absence of the notice. *Cf. Aurora Loan Servs., LLC v. Pajor*, 362 Ill. Dec. 337, 343–44, 973 N.E.2d 437, 443–44 (2d Dist. 2012) ("Where, as here, the mortgagor has alleged only a technical defect in the notice and has not alleged any resulting prejudice, a dismissal of the foreclosure complaint to permit new notice of the grace period would be futile; we would not read the section to require such a result unless its plain language compelled it."). In the case before this court, Defendants' application for HAMP mortgage assistance demonstrates that they understood that their title was in jeopardy. Moreover, if the notice actually was mailed, it is hardly surprising that Defendants did not receive it, in light of the difficulties Plaintiff had in serving them with process at their own residence address. (*See* Mot. for Serv. by Publ'n [11].) The plain language of the Illinois' Homeowner Protection Act requires, however, that Plaintiff take the necessary steps to provide Defendants with a notice of their default, and an opportunity to cure that default, which includes actually "sending . . . the notice." 735 ILCS 5/15-1502.5(c).

Plaintiff's only response to this concern is to cite *Intercon Solutions, Inc. v. Basel Action Network*, No. 12-C-6814, 2013 WL 4552782 at *6 (N.D. Ill. Aug. 28, 2013) for the proposition that "[t]he mailing of the Notice was raised as an affirmative defense" on which Defendants bear the burden of proof. (Pl.'s Reply at 11.) But *Intercon Solutions*, a defamation action, does not address notice requirements under the Homeowner Protection Act, and the court cannot find any cases that suggest noncompliance with those requirements is an affirmative defense. Rather, the Homeowner Protection Act provides that "[n]o foreclosure action . . . shall be instituted on a mortgage secured by residential real estate before mailing the notice" required under Section 1502.5(c). 735 ILCS 5/15-1504, 1502.5(b); *see also Ramos*, No. 11-C-2899, 2013 WL 1498996 at *5 (identifying the notice requirement as a "condition precedent to foreclosure"); *Weatherspoon*, No. 11-C-3495, 2012 WL 1430361 at *2 (same). Because Plaintiff has not satisfied the court that it mailed a notice of default letter to Defendants, the court denies Plaintiff's motion for summary judgment.

Defendants also appear to challenge the substance of the letter, but as the court has stricken Plaintiff's Exhibit 6, the Notice of Default letter, and concluded that Plaintiff has failed to provide any evidence that it mailed the letter, it need not address Defendants' challenge here.

## CONCLUSION

For the reasons discussed above, Defendants' motion to strike [50] is granted with respect to the Notice of Default letter, and otherwise denied. Plaintiff's motions for summary judgment [45] and for the appointment of a special commissioner [49] are denied without prejudice.

ENTER:

Dated: March 28, 2014

_____
REBECCA R. PALLMEYER
United States District Judge